# CASES

IN

# THE SUPREME COURT

OF

## PENNSYLVANIA

---

## Masso *v.* Pittsburgh & Lake Erie Railroad Company, Appellant.

*Negligence—Contributory negligence—"Stop, look and listen"—Questions for jury—Charge—Evidence—Negative testimony.*

1. In an action against a railroad company to recover damages for personal injuries, sustained by the plaintiff by being struck by a passenger train while he was crossing the defendant's railroad in a buggy, the question whether he stopped at the proper place between the tracks of the defendant company and those of another railroad company which he had to cross before reaching the tracks of another company or whether he stopped before reaching the tracks of the other company and therefore at an improper place was for the jury.

2. Where in such a case, the plaintiff and another witness testify that they had reason for listening for signals by the approaching train and that there was no headlight on the engine and that no warning was given, and the plaintiff's reason given was that he intended to cross the track and had stopped, looked and listened for a train, and the witness testified that he was driving a skittish colt and knowing the crossing to be dangerous, desired to know whether a train was approaching or not before he attempted to pass the crossing, such testimony, together with negative testimony that no signals were heard and no headlight seen, is sufficient to go to the jury on the question of whether the engine had a headlight and gave a signal of its approach to the crossing.

Argued October 14, 1913. Appeal, No. 199, Oct. T., 1913, by defendant, from judgment of C. P. Lawrence

County, September T., 1909, No. 41, on verdict for plaintiff in case of Mike Masso v. Pittsburgh & Lake Erie Railroad Company. Before BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before PORTER, P. J.

From the record it appeared that the New Castle branch of the Pittsburgh & Lake Erie Railroad Company runs in a northerly and southerly direction from New Castle Junction to New Castle and a short distance north of New Castle Junction crosses at grade a public road. The tracks of the railroad company are four in number and lay along the east side of the Shenango river. The easterly track is used for freight; the second track is the north bound passenger track; the third the south bound passenger track; and the fourth, being the track nearest the river, is used for freight purposes. East of these tracks is a strip of land of the width of thirty or forty feet and east of this strip two tracks of the Baltimore & Ohio Railroad Company. On the 25th day of May, 1909, Mike Masso was riding with William J. Irwin in a buggy. While crossing the tracks of the defendant, the Pittsburgh & Lake Erie Railroad Company, going west, the team in which he was riding was struck by a train on the south bound passenger track at the before mentioned crossing and in the collision Masso received the injuries for which he sued.

While defendant's witness, Albert Shaner, was on the stand the following questions were asked:

"Q. From your experience in running trains on that road, and from your observation, state whether or not that was the proper place to blow that whistle for giving notice of an approaching train to that crossing?

"By the Court. It is a question for the jury to determine whether it would be a proper place, the point at which the whistle was blown was such a distance as to give proper notice to travelers. We will sustain the

objection and seal a bill of exceptions for the defendant. (1)

"Q. Mr. Shaner, state whether or not the whistle you sounded on that night, could be clearly and easily heard at Cherry street?

"A. Yes, sir."

The plaintiff submitted the following point:

"2. I say to you, as a matter of law, that where a person is waiting and watching, with attention, for an approaching train, and is looking in the direction in which the train is coming and the train is directly in his presence, and they testify that they see no headlight and heard no warning, then I say to you that their evidence is just as positive as a person who testifies that the headlight was burning and the warning given.

"Ans. This point is affirmed, everything else being equal. If he was watching attentively and states a fact negatively it may be just as effective as if he stated it positively. The evidence does not become negative merely because he answers the question negatively, if the jury are satisfied he was giving attention to the matter of which he was inquired. I presume this point is drawn with reference to the testimony of Mr. Davey. And upon that point we say to you that you have the testimony of Mr. Davey as to his observation, his position and as to his listening for the train. He said he did not hear the whistle blown or the bell rang. Now, there is in the trial of cases what we call positive and negative testimony. For instance: If I should ask one of you gentlemen whether or not there is a word over the entrance to the court room printed above the door and one of you would say there is not and another would say I did not see any; the man who says there is not is giving what we call positive testimony, and it is entitled to more weight than is the testimony of the man who says "I did not see any," for the reason that when a man says there is no such a thing there, then we have a right to assume that he looked to see. Where the man says "I

did not see any," that is negative because he may not have looked to see. But if he says I looked and did not see any, then that statement is just as positive as that of the man who says there is none there, because he looked too. So that his testimony then becomes as positive as that of the man who says there is not such a word over the door. But you have the testimony of Mr. Davey further on the question of the light—as to the headlight. He says that he did not see a headlight. You will take into consideration whether or not he could have seen it, or whether or not being at the side of an engine he could have seen the headlight. That is just a little different proposition from the question of hearing the signal. Could he have seen it had he looked? (3)"

See also next case, Irwin v. Pittsburgh & Lake Erie R. R. Co., 243 Pa. 7.

Verdict for plaintiff for $3,000, and judgment thereon. Defendant appealed.

*Errors assigned,* inter alia, were (1) ruling on evidence and (3) answer to plaintiff's point.

*J. Norman Martin,* with him *Norman A. Martin,* of *Martin & Martin,* for appellant.

*C. W. Fenton,* with him *W. N. Anderson* and *Rollin Haun,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, January 5, 1914:

There are thirteen assignments of error in this case, but the controlling question and the one to which the appellant devotes the principal part of his argument is whether under all the evidence the court should have withdrawn the case from the jury by directing a verdict for the defendant.

If we were sitting as jurors, we would have some difficulty in coming to the conclusion that the plaintiff per-

formed the duty required of him to stop, look and listen at a proper place before he attempted to make the crossing at which he was injured. His testimony is, to say the least, confusing. Whether he stopped between the tracks of the Baltimore and Ohio Railroad Company and those of the defendant company or stopped east of the tracks of the Baltimore and Ohio Railroad Company is difficult to determine from his evidence. Part of it would warrant the conclusion that he stopped between the tracks of the two companies, and from another part of it the jury would have been warranted in finding that he stopped east of the Baltimore and Ohio tracks. If the distance between the tracks of the two companies was thirty or thirty five feet and he could see an approaching train for several hundred yards if he had stopped between those tracks, the evidence would indicate that was the proper place to stop. The court directed the attention of the jury to this question in the following language: "It then becomes an important question in this case as to where this buggy in which these men were riding was stopped. Was it stopped at the last safe place to stop before committing themselves to the act of crossing over the track? Was it at such a place as a reasonably prudent person would have stopped to let some one get out of the buggy, go ahead and look to see whether a train was approaching and then come back and get into the buggy, or was it stopped up above the B. & O. tracks or some distance away from the tracks of the P. & L. E. Company?......You will pass on and conclude as to the place where he stopped and whether or not it was such a place as a reasonably prudent person would have stopped for the purpose of looking and listening for an approaching train or getting out and coming over to the track to look and listen." We must, therefore, assume that the jury found that the plaintiff did perform his duty in this respect and stopped at the proper place to look and listen for an approaching train. We think the

confusion in his testimony could have been avoided had the witness been permitted to show where he alighted by indicating the point on the rough sketch of the crossing offered by appellee or on the defendant's map which was used on the former trial. The plaintiff is an Italian and understands English very imperfectly. With the sketch or map before him he no doubt could have pointed to the exact position where he alighted from the buggy and went forward to look for an approaching train. The rough sketch or drawing was presented to him for the purpose but the defendant's counsel objected to its use by the witness and the court sustained the objection. We must deal with the testimony as we have it, and we are not convinced the learned court was in error in refusing to declare as matter of law that the defendant company was free from negligence or that the plaintiff was guilty of contributory negligence. The learned judge heard the case, was no doubt familiar with the place where the accident occurred and after full consideration refused to sustain the appellant's contention in this respect. We are not satisfied that we should interfere with his conclusion.

The exclusion of the question put to Mr. Shaner did the appellant no harm. It was immediately followed by another question the answer to which was broad enough to cover the preceding question.

We see no merit in the third assignment which alleges error in the court's answer to the plaintiff's second point which requested the court to charge as to the weight of certain alleged negative testimony, as to the headlight on the locomotive, and as to the warning of its approach to the crossing. This point refers to the testimony of the plaintiff and Mr. Davey, both of whom testified that they had reason for listening for signals by the approaching train and that there was no headlight on the engine and that no warning was given. The plaintiff's reason was that he intended to cross the track and had stopped, looked and listened for a train; and Davey

testified that he was driving a skittish colt and knowing the crossing to be dangerous he desired to know whether a train was approaching or not before he attempted to pass the crossing. This, with the negative testimony in the case, was sufficient to go to the jury on the question of whether the engine had a headlight and gave a signal of its approach to the crossing. Whether the defendant was negligent in this respect was for the jury.

It may be suggested that the appellee endangered his case by submitting numerous points for charge to the learned trial judge. In its general charge, the court had covered all the questions raised by these points by instructions favorable to the appellee, and there was no necessity for complicating the case by requiring the court to rule on the several points. About half of the assignments of error are to the answers of the learned judge to the appellee's points and had he inadvertently erred in answering any of them by reason of the hurry in the trial it might have been fatal to the appellee's case. The appellee, therefore, may consider himself fortunate in not having suffered by reason of his having interjected into the case requests for instructions which were wholly unnecessary.

The judgment is affirmed.